Good morning. Good morning, your honors. The first case we'll hear is United States v. Penn. Number 14-1831. Good morning. May it please the court, my name is Candace Kane and I represent Jesse Penn Jr. I ask to reserve three minutes for rebuttal. That will be granted. Thank you. There are two reasons why Jesse Penn should get a new trial. First, his 2005 conviction for the exact same offense for which he was on trial was admitted in error, and that error was not harmless. Second, Jesse Penn was prevented from presenting evidence of his ex-wife's extreme personal bias against him and motivation to testify. Do we really need to rule on that, counsel? Counsel, if you win on your primary argument, presumably whoever is trying the case, I don't know whether that was you or somebody else, is going to be in a position to handle this in accordance with Rule 613B and the way the district court apparently wanted it handled, right? That's right. Your honor, this case could easily be resolved by looking at two recent cases that were decided by this court, the Caldwell case and the Eben Brown case. You're right, but let's start off with what is the standard here? Now it seems like we have two. You're pressing one. It seems like our case law seems to embrace the highly probable that error did not contribute to the judgment standard. You seem to be pressing a higher standard, I guess from the Chapman case. Yes, your honor. They had suggested the higher standard because of the error in this case and the burden it placed on Mr. Penn's presumption of innocence. However, the court doesn't have to grapple with that because the error here does not meet the non-constitutional standard. We have to concede that don't our cases embrace the first standard, the highly probable one? Right. There's a lot of double negatives in there. So the test, though, is whether the error, whether it is highly probable that the error did not contribute to the judgment. Brown is the case that you rely on in part, right? I mean, you just cited it as one of the two recent cases. Brown is a possession of a weapon case and the same 404B arguments could be made, were made, and we've applied the highly probable standard, right? Why would we not do exactly what we did four months ago in Brown? Right. I think that the court could do exactly that because the error here is so serious and when you look at the government's case, the government seems to be arguing that so long as there's sufficient evidence of guilt that the error is not harmless. But as we know, under Caldwell and Brown, this court we have to have a You can see that's the standard that we've applied in life circumstances and very, very recently, correct? That's right. That's right. And I would urge that the court find that this error is not harmless. If the court does not feel it meets the constitutional standards, then it's certainly well within the non-constitutional standard. Ben, can I get an answer to my first question? Am I correct that if we rule for you on your primary argument, there's no reason to address the second argument because the second argument about admitting the text messages is a matter that can be handled without any prejudice to your client on a retrial, right? Your client, if there is a retrial, we were defined in your favor, the issue of how to handle those text messages is just a moot point because you get to handle it again, right? That's right. Okay. That's right. And there are three really distinct reasons why this error is not harmless. The government's case here was not overwhelming. Contrary to the government's assertion in its brief, there was no admission by Mr. Penn that the guns were his. Can I make the guns go away? That's a quote from your client. Could that fairly be interpreted by a jury as a confession? No. It's certainly open to interpretation, and one interpretation is that he was looking for a way that he and perhaps his wife could not be charged, but he never said, oh, you got me or anything of that sort. So this statement really cannot fall within the category of a confession or admitting guilt. How about the statements from his wife putting the gun in his hand? You know, again, in Brown, a very similar case. The court was at pains to say that the government didn't bring forth a witness to put the gun in the defendant's hand, but here the government's got that. His own estranged wife puts the gun in his hand. Well, that's where we get to the second error in this case, that it was a credibility issue concerning Janera Penn. When she made that statement, she was basically answering with the one-word answer, yes. The prosecutor asked her a question. Did you see him with that gun? Sure. And your client had a full and fair opportunity to cross-examine, right? Nobody said you can't use those text messages. There was a decision not to use the text messages. There was a strategic decision, which didn't work out well for your client, but it was a choice not to cross-examine with the text messages. So why isn't your client just stuck with that answer and with an eyewitness putting the gun in his hand? Well, because it wasn't a strategic decision. The trial counsel didn't think that he had to present that evidence. Ineptitude or strategic, at the end of the day, the question is, was there something unfair about the cross-examination? He was given a full and fair opportunity to cross, was he not? Well, he also needs a fair and full opportunity to present defense evidence, and that's what was missing in this case. He never had a chance to present strong evidence of a personal animus, personal bias by his ex-wife. How can you say he never had the opportunity? He did have the opportunity. He had the witness on the stand right there. That was the opportunity. If the opportunity passes, that doesn't mean you didn't have it. It means you didn't take it, right? Well, in this case, Your Honor, he thought he did not need that, and when he was trying to comply with the court's order that he have a witness, then he asked to call Genera-Penn back or the agent who had put in the extraction report. And remember, the government made no argument, of course, that the text messages didn't go from Genera-Penn to a phone that she thought Mr. Penn had. I mean, maybe it was strategic. Maybe he didn't really even need the text messages. They didn't mention guns or threats or anything. Anything to do with his charge. I mean, the jury knew that there was a strained relationship here. This is sort of cumulative just to say, hey, you know, it was bad. Here's even more proof of why the relationship was not good. Well, Your Honor, she did have motivation to change her story because she was afraid if she didn't tell the police what they wanted to hear, she might get arrested or lose custody of her child. What does that have to do with the text messages? Because the text messages, when you read the words, they show a strong personal resentment against her husband for good reason. I mean, he was going off with other women. Yeah, but that doesn't have anything to do with what you just said. You just said she had a motive because she was worried about losing her child and maybe being charged herself. Maybe that's true, but that's not the subject. The text messages are, why did you spend more on your girlfriend than on me? Elaborate it on in colorful language. But nothing to do with I might get charged, I might lose my child. Counsel sought to introduce this as evidence of bias. And bias, a motive to color your testimony, it doesn't have to pertain or be the subject of the weapon. It is just a reason to not be maybe wholly truthful or completely honest. And he needed to have that testimony about the text messages to show just how strong her personal resentment was towards him. So if we find there was no error in connection with the ability to present the text message and we have her testimony putting the gun in the defendant's hands, then is the error harmless? No, Your Honor. The two errors in combination certainly deprive Mr. Pence. What if we find no error with respect to how that text message was handled? So you only have one error then. And that one error is certainly sufficient. And that error the government has admitted to. The only thing they say is that it wasn't harmless. But that error in and of itself does not leave this court with a sure conviction that it did not unfairly prejudice him. The two reasons work together for why he did not have a fair trial. However, either one individually was certainly enough of an error to deprive him of fair trial. This case rested on her credibility. When you say either one is enough, would you concede that your primary argument, that your main argument, the 404B argument, has got better traction than your argument about the cross-examination and the text messages? I'm just curious about your tenacity on that point. Since 613B says the judge absolutely can refuse to permit extrinsic evidence of bias if the witness wasn't afforded an opportunity to discuss it on cross. Well, Your Honor, certainly this court has recently ruled in Brown and Caldwell on that first issue. Yeah, it gives you a little more punch, doesn't it? Yes, definitely. A more favorable standard of review, I think, too, right, for you? Yes, that's right. It is still a high standard, too, though. It's a very high standard. The test would be whether it is highly probable that the error did not contribute to the judgment. And certainly the error here contributed to the judgment, especially when you look at the potent form that that 2005 conviction was presented to the jury. There was an agent testifying, they published the copy of the conviction to the jury, and then they sent all the exhibits, and this was an exhibit, they sent all the exhibits to the jury room. So they had that certified copy right there in front of them. Your argument, you've got some points. I mean, you point out in your brief about the lack of fingerprints, DNA, other evidence linking the defendant to the gun. It's a good point. But you do have this woman's testimony here, and isn't the jury entitled to credit it? Well, Your Honor, that is why it was so important for Mr. Penn to be able to poke at her testimony and poke holes in it. And he did, he was able to to some extent, but there was also the attempt to show her personal bias against him that he was prevented from showing. And that, Your Honor, is what made the trial supremely unfair. Okay, thank you. We'll get you on rebuttal. Thank you. May it please the Court, my name is Michael Ivory. I'm an Assistant U.S. Attorney from Pittsburgh. Good morning, Your Honors. Good morning. The standard is, and this Court has consistently applied when dealing with an evidentiary error, whether or not it is highly probable that the error did not contribute to the verdict. There are a number of reasons why the error in this case, which was the government's failure to articulate how this evidence was relevant. I'm sorry. Yes. Go ahead. I was just going to say, maybe you could start with how this is an admission. I'm having a little confusion as to how his statement is a confusion about getting rid of the guns. What happened was, is Mr. Penn was home. He had a key to the residence. He was the only person present in the house. The agents found a ballistic vest. Subsequently, he obtained a search warrant. But you've got to link it to him, of course. Right. I'm sorry, Your Honor? You've got to link it to him. We were able to link it to him. Mrs. Penn. Well, let's talk about his statement. His statement. Well, they find the evidence. He's being transported to the Allegheny County Police Headquarters, and he asks, What did you find? And two agents, two officers. Wouldn't that be just a, wouldn't anybody ask that question? Well, a lot of people would ask that question, but it's his answer. That's not an admission, though, right? It's an admission. That's an admission? No. The admission is what his answer was, which was, quote, I will do anything to get rid of those guns. Now, he doesn't say what guns. He doesn't say, Oh, my wife's guns. He doesn't say, I don't know what you're talking about. What's the exact quote? The exact quote is. Because I don't think that was. I thought the exact quote was something about can I make the guns go away. That's what I thought. I'll do anything to make those guns go away. Two police officers testified to that statement. One was Detective Foley, and the other one was Detective Hitchens. So why was that an admission? You have to place it within the context. And if Mr. Penn had truly not known that the guns were present, or if they were his wife's, he would have said so. And this was argued in the closing. Mr. Penn maintained that was not an admission. The jury was free to believe, to credit or discredit that argument, and chose not to. How do you know they discredited that or accepted that argument? This is not a case where that's your evidence, because your evidence also includes the 404B evidence that is so badly admitted that you yourself are declining to defend its admission. So you've got a pool of evidence, and you can't – well, can you tease that out for us? How do you know what the jury recredited and didn't? You have to look at the totality of all the evidence, Your Honor. And if you look at the totality of the evidence, it includes the tainted evidence that you admit is tainted. We admit – the nature of the government's concession in this case was that we offered it for the right reason. And this court in Brown said that prior involvement in firearms, with firearms, is a proper non-propensity purpose when we deal with a constructive possession case. Now, hold on a second. I'd be curious to see where you find that in Brown. Caldwell was a constructive possession case. Caldwell was an actual possession case, Your Honor. Yes, Caldwell was an actual possession case, and that's why you might try to distinguish Caldwell and say, well, that was actual possession. So things he said there, by implication, don't apply in a constructive possession case. But even in a constructive possession case, there's got to be some question about knowledge or intent. I mean, you used knowledge and intent. That's what was – I shouldn't say – whoever was arguing for the government used knowledge and intent as the basis. And how was knowledge and intent ever a question? Well, this was a constructive possession case, and at page 292 of the Brown decision, Judge Smith discusses what a classic constructive possession case was. The guns are found in proximity to the defendant. They're not found on the defendant's person. Right, and these are not found in proximity to the defendant. They're found in proximity to a shoebox. Well, the defendant is present in the house, Your Honor, and it's not a – it's a row house. I mean, it's not a big house, and he's the only person present. And his items are found in close proximity to the shoebox. So you're – the logic of your argument is every time there's constructive possession as opposed to actual possession, you're allowed to put in a prior conviction for the same offense, because ipso facto by the non-guilty plea, knowledge and intent are at issue. That's the logical end of your position, isn't it, Mr. Iverson? To quote the court, Accordingly, we have no difficulty concluding that showing Brown's knowledge that the gun was in the impala was an appropriate non-propensity purpose for offering the evidence of Brown's previous drug purchases. So I'm asking you, is the logic of your position that every time the government makes a constructive possession charge, by that fact and the fact of the defendant's not-guilty plea, you're entitled to put in as 404B evidence of knowledge and intent a prior conviction for the same offense? We are permitted to offer it. We are not entitled to have it admitted. We still have to go through the procedural requirements as per Brown, as per Codwell, as per Davis, as per Sampson. So knowledge and intent will always be an issue, in your view, in a constructive possession case. Unless you have a situation, as in Codwell, where the defendant was willing to stipulate knowledge if the jury found possession. Well, I thought that's precisely what happened here. The argument we've received in the briefing, which we can read in some of the transcripts, was Mr. Penn saying, I'm not saying that I had something by accident or mistake and I didn't know I had it. I'm not saying I didn't know what a gun was. I'm not saying I didn't intend to have it if it was mine. I'm saying I had nothing to do with it. Knowledge and intent have nothing to do with this. It's not mine. I'm not connected with it in any way, shape, or form. No accident, mistake, etc. What's the response to that? And this Court, as early as Sampson, back in 1992, stated that just because a defendant's theory presupposes a nonexistence of a certain element, does not relieve the government of that proof. I mean, there has to be a clear stipulation as to the contested element for which the 404B evidence is being offered. That was not done in this case here. It had been done in other cases in Codwell, which was one of the reasons why this Court did not credit the government's argument concerning the harm. That reaches pretty far. I'm sorry? That reaches pretty far because knowledge is always going to be an intent except in strict liability crimes, so you could always claim that knowledge is at issue and always claim that there's a non-propensity purpose for your 404B evidence on that theory, right? Again, you have to look at the particular evidence. You have to look at what the elements of the offense are. And then, just because the government could offer something for a non-propensity purpose, it's still incumbent, A, on the government to articulate the chain of inferences, which was not done here in this case, which is the basis of the government's concession, and the district court using the careful precision that's required of it under this circuit's case law. That's what I followed in this case, which is why the government has conceded that it was erroneous, harmlessly erroneous, to admit the evidence of the conviction in this case. I think when you look at the other harmless error cases when we deal with the 404B cases, especially in Codwell and especially in Brown, the one fact that this court will take into account is the nature of the defense. I believe when the government's argument in Codwell was rejected about harmlessness, they noted that Mr. Codwell had vigorously contested, presented a case. He testified on his own behalf. He presented cooperating witnesses. So it's incumbent on the other side. We're supposed to look at the defendant who's got no obligation to put on any case and say, you didn't fight hard enough, so this erroneously admitted evidence is harmless? That seems to be a factor that this court has taken into account, both in Codwell as well as in Yvonne Brown. In Brown, Mr. Brown's girlfriend was able to testify that the gun was hers. She put it in the car. She forgot to tell him about it. Let's stick with Codwell for a second. In Codwell, you've got three police officers testifying. Two of them say they see the gun in his hand. One of them says, I can't see his hand, but I see the other guy's hand's implication. He clearly didn't have it when the gun dropped. So you've got the testimony of three police officers, and the court looking at that says, that's not harmless. Here, you've got a gun near a shoebox with some cell phones and papers and an angry wife's one-word answer. Now, as between the two, if we were looking at Codwell and said, that's not harmless, how could we look at the quantum of evidence you provided in this case and say, overwhelming? He admitted that the guns were his. So it's the, I'll make the guns go away, that's the admission that you think puts it over the top. That's the admission. The wife's testimony that she saw him with the gun, that she found the guns in the backpack with the holster. After he shortly moved in, she said, I don't want these in the house. He said, I'll take care of it. Then we have all of the other evidence found in proximity to the guns. How does I'll take care of it make it more likely that the guns are his? That he possessed it before and not, I'll take the garbage out? He didn't say, what guns are you talking about? He said, I'll take care of it, honey. I mean, I will remove the guns. Boy. If saying to your wife, I'll take care of it, is evidence of guilt, I'm in serious trouble. Well, you know, I'd be a career offender at that point. And so are a lot of other people, I'll bet. But he said that he would take care of it. And, you know, not only that, like I said, she found the guns, the ammunition, the holster in the Air Jordan backpack. Subsequently, we found the holster, later was found in a men's Timberland boot, in the same storage unit by the police. Right. I'm struggling to see how the fact that there is evidence that there's a gun makes it evidence that it's his gun or that he possessed the gun at some point. She saw him in possession of the Taurus pistol. Okay. You can say that. That's certainly evidence. Right. But the fact that she found a backpack with a gun and a holster and ammo on it, how does that prove anything about him? Well, she confronted him about those. There had been evidence of an agreement that he was not permitted to bring these items into the house. That she found them in the house and that she confronted him and he said, I'll take care of it. Is the proximity of the gun and other stuff, the ammo, close to his box of documents and cell phones? Is that really evidence of guilt? Or shows his possession just because this backpack in his storage room was near something he owned? Well, it's found in proximity and it certainly would be consistent with the story that he had recently moved into the house. I mean, his items are not found strewn all over the residence. The indicia is not found strewn all over the residence, as is what typically happens in a search of someone's house. The testimony was that he had recently moved in and that would be consistent with it. The other thing, too, Your Honor, is that in the box there were three cellular phones. The one containing the infamous text. Now, the significance of that is there were a series of texts that Ms. Penn had sent to Mr. Penn. We saw them, yeah. But the interesting thing is the last one had been marked red at like 9.53, which meant that Mr. Penn, or presumably Mr. Penn, was reading these texts. And then he went into the storage unit and he put the cell phone into the box. That occurred about an hour before the police arrived. Somebody retrieved the text. Yes. You seem to make the argument that the 404B problematic evidence was sanitized because it wasn't referred to in closing statement. But doesn't Brown foreclose that kind of an argument? Brown says, oh, you just did it in a stipulation. So what? This kind of evidence is so damaging. I only did it a little bit bad with bad evidence. It doesn't cut it, right? Isn't that the import of that language from Brown? Well, again, in Brown we argued it was harmless because of the stipulation. But also in Brown – And that was expressly rejected is the question I'm asking you. The government did make that argument in Brown, and it was explicitly and emphatically rejected by the court. So I'm putting it to you. Aren't we in the same posture here when you say, well, we didn't refer to it in closing argument, so it's really not that bad? I don't believe so. And I think – I'm not sure if it was Brown or Davis, the one of the two cases – where the court, this court, had difficulty with the cautionary instruction that was given, or the limiting instruction that was given in this case. Now, we did not reference the nature of the prior conviction in our opening. We did not reference it during our closing. Judge McVeary in this case gave a very, very strongly worded instruction to the jury, which was, you cannot consider this evidence until you find that the government has proven beyond a reasonable doubt that the defendant possessed the gun. And only then – the evidence should never have come in in the first place, so that we're not even thinking about that information. Right? We're not in a position to say to ourselves, it's really okay because they didn't refer to it in closing or opening, or it's really okay because he gave a cautionary instruction, because the government quite rightly points out it should never have come in, period. Correct? It was offered. I believe that the reason for which it was offered was correct. Again, the basis of my concession is that we did not properly explain how it was relevant. We did not articulate the chain of inferences. So the government is under the impression that this 440 evidence would have been okay if you'd – it's not that it was bad because it really didn't have a non-propensity purpose. It's because you guys believe right to your heart that it's only that you didn't touch all the bases as you ran around. Right? This court has affirmed the admission of similar acts of conduct where the government has made a proper articulation. I believe the Lopez decision is one such case, and maybe Gavon was another one. We did not do it in this case. Okay. Thank you, counsel. Thank you, your honors. Just briefly, I think the court is correct in asking the government just what was their obligation in this case. You can see from the judge's instruction how confusing it was to be able to tell the jury that they first find possession and then go to the question of the conviction to decide whether that possession was inadvertent. Is it correct? Is the government right, Ms. Cain, that because they have the burden of proving beyond a reasonable doubt that there was knowing possession, that knowledge was an element and they had the obligation to prove it and therefore there was a proper non-propensity purpose for the evidence? Well, they have to prove beyond a reasonable doubt that the possession was knowing, but Mr. So why can't they prove that by showing he's got a prior conviction, he knows what it is to possess a gun? That's what I take their argument to be. Well, because the non-propensity purpose is really not significant, and the prejudicial impact. Why not? Well, we'll leave prejudicial aside for the moment. We'll deal with 403 at a different time or place. But for now, are they correct that it's a proper non-propensity purpose in a case, in any case, where there's constructive possession alleged? No. In a way, I think that the opinions that make a distinction between actual possession and constructive possession might not be as helpful when looking at this case. This case really defended as though it was an actual possession case, and it's not so much that Mr. Penn inadvertently had it or mistakenly had it. He said, those are not mine. I did not possess it. Sure, and they come back, as did the district court judge, and respond to that argument by saying, look, that's your theory, but theories change. Their burden of proof is what it is. They have to prove knowing possession, and they ought to do it beyond a reasonable doubt. So it is an element, and it's in play. That's the argument they're making. I guess I'm asking you, do you have a response to that? And if your response is it may be an element, but it's more prejudicial than probative, fine. But if you've got another answer to it, I'd like to hear it. My other answer is that just like actual possession, when you meet the element of possession, then the knowledge, it's not as though it's a question whether a person knows they have a gun or not. In any case, I mean, this constructive possession case was really like the analysis of an actual possession. And in those cases, this court has said that when you're not rarely, you're rarely looking at whether a person knows they have a gun or not, or whether it's a toy. I mean, they either have it or they don't, and that's really what was taking place here. He either possessed them or he didn't. And the 404B evidence is not probative of knowledge, because just because back in 2005 he had conviction for possessing a gun, has no relationship to the current case of whether he knowingly possessed the gun here. There's no relationship whatsoever, except that there is this highly prejudicial impact. All right, you better wrap up, counsel. Is that it? I just wanted to make one point about the 613B evidence. Make it quick, okay? Yes, this was not a prior and consistent statement. Mr. Penn was offering evidence of bias, which is different. Okay, all right, thank you. Thank you, counsel. Take the case under advisement. Counselor Munible, we'd like to greet you at sidebar to your right, and thank you for your fine advocacy here. We'll go off the record for a minute.